UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HEATHER MICEK and JASON MICEK,
individually and on behalf of minors
K.M.M. and K.N.M.,

                    Plaintiffs,

v.

MAYO CLINIC,

                    Defendant.

Case No. 21-CV-0436 (PJS/ECW)

ORDER

Elliot L. Olsen, SIEGEL BRILL, P.A.; Casey Matthiesen and Teresa F. McClain, ROBINS KAPLAN LLP, for plaintiffs.

John B. Casserly and Andrea P. Hoversten, GERAGHTY, O'LOUGHLIN & KENNEY, PA, for defendant.

Plaintiff Heather Micek gave birth to twin girls (K.M.M. and K.N.M.) in 2011. Both girls were born with permanent disabilities on account of a condition known as twin-to-twin transfusion syndrome ("TTTS"). Heather and her husband (Jason Micek) brought this medical-malpractice action on their own behalf and on behalf of their daughters, alleging that Heather's obstetrician failed to properly diagnose and treat her TTTS. But the Miceks (who are citizens of Wisconsin) have not sued either the obstetrician (who is also a citizen of Wisconsin) or the clinic that employed him (which is also a citizen of Wisconsin). Instead, the Miceks have sued only the clinic's parent company, defendant Mayo Clinic ("Mayo") (which is a citizen of Minnesota). The

Miceks allege that, because they are citizens of Wisconsin and Mayo is a citizen of Minnesota, this Court has diversity jurisdiction over this action.

This matter is before the Court on Mayo's motion to dismiss for failure to join an indispensable party and for lack of subject-matter jurisdiction. ECF No. 12. For the reasons that follow, Mayo's motion is denied.

## I.  BACKGROUND

Heather became pregnant with twin girls in 2011 and began receiving prenatal care from Dr. James Walker in Menomonie, Wisconsin. Compl. ¶ 11; Walker Aff. ¶¶ 4–5. According to the Miceks, Dr. Walker negligently failed to diagnose and treat Heather's TTTS and, as a result, their daughters were born with permanent disabilities. Compl. ¶¶ 1, 33. Heather, Jason, their daughters, and Dr. Walker are all citizens of Wisconsin.

At the time that he was treating Heather, Dr. Walker was employed by Mayo Clinic Health System–Red Cedar, Inc. ("Red Cedar"). Walker Aff. ¶¶ 6–7. Red Cedar is a wholly owned subsidiary of Mayo and Mayo Clinic Health System–Northwest Wisconsin Region, Inc. ("NWWR"). Degen Aff. ¶ 6. NWWR, in turn, is a wholly owned subsidiary of Mayo. Degen Aff. ¶ 3. In January 2018, Red Cedar merged into NWWR. Alcott Aff. ¶ 4; Degen Aff. ¶ 4. Red Cedar and NWWR are incorporated and

have their principal places of business in Wisconsin.  Degen Aff. ¶¶ 2, 6.  Mayo is

incorporated and has its principal place of business in Minnesota.  Alcott Aff. ¶ 2.

Dr. Walker maintains professional liability insurance and participates in the

Wisconsin Injured Patients and Families Compensation Fund ("Fund"), which provides

excess insurance to health-care providers under certain circumstances.  Walker Aff.

¶¶ 9–11; Wis. Stat. § 655.27(1).

The Miceks have brought this federal lawsuit against Mayo alone.  The Miceks

have also filed a state-court action in Wisconsin against Dr. Walker and NWWR.  ECF

No. 36.

## II.  ANALYSIS

### A.  Standard of Review

Mayo has moved to dismiss this action under Rule 12(b)(7), which "permits

dismissal of a complaint for failure to join a party under Rule 19 . . . ."  *Fort Yates Pub.*

*Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 671 (8th Cir. 2015) (citation and

quotation marks omitted).  "For the purposes of a Rule 12(b)(7) motion, the court must

accept the complaint's allegations as true, and may also consider matters outside the

pleadings when determining whether Rule 19 requires [joinder of an absent party]."

*Omega Demolition Corp. v. Hays Grp., Inc.*, 306 F.R.D. 225, 227 (D. Minn. 2015).  "The

party seeking dismissal bears the burden of demonstrating that the complainant failed

to join a necessary party to the lawsuit under Rule 19." *Wilwal v. Nielsen*, 346

F. Supp. 3d 1290, 1300 (D. Minn. 2018).

Mayo has also moved to dismiss this action for lack of subject-matter jurisdiction

under Rule 12(b)(1).  Because Mayo makes a factual attack on this Court's jurisdiction,

the Court need not accept the allegations in the complaint as true, but can instead

receive evidence and make factual findings.  *Disability Support All. v. Heartwood Enters.,*

*LLC*, 885 F.3d 543, 547 (8th Cir. 2018); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th

Cir. 1990).

### B.  Joinder

The Court turns first to joinder.  According to Mayo, this lawsuit must be

dismissed because Dr. Walker and NWWR—to which the Court will refer collectively

as the "Wisconsin non-parties"—are indispensable parties under Rule 19, and their

joinder is not feasible because it would destroy diversity jurisdiction.

Mayo's motion raises three questions.  First, are the Wisconsin non-parties

"required" under Rule 19(a)(1)?  Second, if they are required, is joinder feasible?  And

third, if joinder is not feasible, should the action continue in their absence or should the

action instead be dismissed under Rule 19(b)?  *See Monacelli v. Kemper Lesnik Hosp., Inc.*,

No. 17-CV-4713 (WMW/LIB), 2018 WL 11219908, at *2 (D. Minn. July 13, 2018); *Omega*

*Demolition*, 306 F.R.D. at 228; Fed. R. Civ. P. 19.  "Determining whether an entity is an

indispensable party is a highly-practical, fact-based endeavor." *Fort Yates*, 786 F.3d at 671 (citation and quotation marks omitted).

To begin, then, the Court must determine if the Wisconsin non-parties are required parties under Rule 19(a)(1).  A person is a required party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  The Court will first address Rule 19(a)(1)(A) and Rule 19(a)(1)(B)(ii), and then turn to Rule 19(a)(1)(B)(i).

### 1.  Rule 19(a)(1)(A)

Rule 19(a)(1)(A) asks whether, in the absence of the Wisconsin non-parties, this Court can provide complete relief to the existing parties—that is, to the Miceks and Mayo.  *See Cedar Rapids Bank & Tr. Co. v. Mako One Corp.*, 919 F.3d 529, 534–35 (8th Cir. 2019) ("[T]he focus [of Rule 19(a)(1)] is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person."

(citation and quotation marks omitted)); *Gwartz v. Jefferson Mem'l Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994). The answer is clearly "yes."

On the one hand, if the Miceks prevail,[1] the Court will enter (and Mayo will pay) a money judgment that will fully compensate the Miceks for their injuries.[2] That is complete relief for the Miceks. On the other hand, if Mayo prevails, the Miceks will be

---

[1]The parties dispute whether, if the Miceks prove that Dr. Walker committed malpractice, Mayo can be held liable for that malpractice. But these arguments go to the merits of the Miceks' claim against Mayo and are irrelevant to the Rule 19(a)(1)(A) analysis. The question for the Court is not whether Mayo is liable to the Miceks. The question is whether, *if* Mayo is held liable to the Miceks, the Miceks can receive complete relief in the absence of the Wisconsin non-parties. They can. *See Gwartz*, 23 F.3d at 1429; *Thomas v. City of St. Ann*, No. 4:16 CV 1302 RWS, 2019 WL 4169215, at *2 (E.D. Mo. Sept. 3, 2019); *Monacelli*, 2018 WL 11219908, at *2 n.1.

[2]Mayo argues that the Fund is a required party because the Fund will not pay a judgment against Dr. Walker unless the Fund is named as a defendant. *See* Wis. Stat. § 655.27(5)(a)1. But that is irrelevant under Rule 19(a)(1)(A). *Cf. Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F. Supp. 2d 973, 978 (D. Minn. 2009) (rejecting argument that potential gap in insurance coverage made former insurance broker required party). There is no dispute that, if Mayo is ordered to pay damages to the Miceks, Mayo has sufficient financial resources to fulfill its obligation, and thus the Miceks will receive complete relief even in the absence of the Fund.

In its reply brief, Mayo asserts—for the first time and without elaboration—that if the Fund is not joined as a defendant, the Miceks might not receive complete relief. There are two problems with Mayo's argument. First, "federal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief." *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007). Second, Mayo does not explain *why* the Miceks might not receive complete relief if the Fund is not joined. The Court will not develop Mayo's argument for it. The burden is on Mayo to show that an absent party is required, *see Wilwal*, 346 F. Supp. 3d at 1300, and Mayo has failed to meet its burden with respect to the Fund.

barred (through the doctrine of claim preclusion) from suing Mayo again.  That is complete relief for Mayo.  No matter the outcome, then, the Court can accord complete relief to the existing parties.

### 2.  Rule 19(a)(1)(B)(ii)

Rule 19(a)(1)(B)(ii) asks whether, in the absence of the Wisconsin non-parties, an existing party will incur "double, multiple, or otherwise inconsistent obligations."  The risk "of being subject to multiple or inconsistent obligations must be real, and not a mere possibility."  *People for Ethical Treatment of Animals, Inc. v. Perdue*, 464 F. Supp. 3d 300, 315 (D.D.C. 2020) (citation and quotation marks omitted).

The risk of multiple or inconsistent obligations almost always arises when the absent party is a prospective *plaintiff*.  In that circumstance, the defendant may be at risk of being sued multiple times and having multiple judgments entered against it.  In this case, however, the Wisconsin non-parties are all prospective *defendants*.  All of the prospective plaintiffs—Heather, Jason, and their two daughters—are parties, and thus there is no possibility that an absent party will later sue Mayo and cause it to "pay[] damages more than once."  *Gwartz*, 23 F.3d at 1430.

Mayo argues that if it loses this case, it may have to bring suits for contribution or indemnification, and such suits could result in inconsistent judgments.  But Rule 19(a)(1)(B)(ii) contemplates inconsistent *obligations*, not inconsistent *judgments*, and

those concepts are "distinct." *Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F. Supp. 2d 973, 978

(D. Minn. 2009); *see also EEOC v. Cummins Power Generation Inc.*, 313 F.R.D. 93, 102–03

(D. Minn. 2015).  An inconsistent obligation arises when a party cannot "comply with

one court's order without breaching another court's order concerning the same

incident." *St. Jude*, 597 F. Supp. 2d at 978 (citation and quotation marks omitted).

Inconsistent adjudications, "by contrast, occur when a defendant successfully defends a

claim in one forum, yet loses on another claim arising from the same incident in another

forum." *Id.* (citation and quotation marks omitted).  Mayo raises the possibility of the

latter, not the former, and thus Rule 19(a)(1)(B)(ii) is not implicated.  *See Rochester*

*Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1016 (8th Cir. 1984) (possible

indemnification did not make non-party required); *Cummins Power*, 313 F.R.D. at 101–02

("Simply because a party may later bring a claim for indemnification or contribution

against a non-party, does not make the non-party necessary."); *AEI Income & Growth*

*Fund 24, LLC v. Parrish*, No. 04-CV-2655 (JRT/FLN), 2005 WL 713629, at *2 (D. Minn.

Mar. 30, 2005) (resolving issue of indemnification of absent party was not "necessary to

[the] resolution of this case"), *aff'd*, 200 F. App'x 621 (8th Cir. 2006) (per curiam).

### 3.  Rule 19(a)(1)(B)(i)

That leaves Rule 19(a)(1)(B)(i), which asks (1) whether a non-party has an interest

in this action and (2) whether the non-party's absence would "as a practical matter

impair or impede" its ability to protect that interest.  The rule sets a high bar.  It is not sufficient that a non-party have an interest in an action; rather, the absence of the non-party from the action must—not just theoretically, but practically—impair or impede the non-party's ability to protect that interest.  *See Cummins Power*, 313 F.R.D. at 102.

Relying on case law that interprets Rule 19(a)(1)(B)(i) expansively, Mayo argues that both Dr. Walker and NWWR are required parties because they were "active participants" in the alleged wrongdoing that is the subject of this action.  Mayo separately alleges that Dr. Walker is a required party because this litigation may have an impact on his medical license.  The Court will address these arguments in turn.

*a. Primary Participants*

Relying on two cases—*Two Shields v. Wilkinson*, 790 F.3d 791 (8th Cir. 2015), and *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir. 1999)—Mayo argues that any time that a non-party "emerges as an active participant in the allegations made in the complaint," that non-party is a required party under Rule 19(a)(1).  ECF No. 27 at 7 (quoting *Two Shields*, 790 F.3d at 797).  That is not, however, what *Two Shields* and *Laker Airways* held.

As an initial matter, in both *Two Shields* and *Laker Airways*, the present party and the absent party were independent; they were not, for example, in an employer-employee or parent-subsidiary relationship.  Moreover, the present party and the

absent party were alleged to be joint tortfeasors; in other words, the plaintiff alleged that both the present party and the absent party had committed torts, and that those torts had caused injuries to the plaintiff.  In such a situation, the present party generally has no interest in exonerating the absent party; to the contrary, the present party often has an incentive to try to shift the blame for the plaintiff's injuries to the absent party.

Here, by contrast, the present party (Mayo) and the absent parties (Dr. Walker and NWWR) are related.  Mayo owns NWWR, and NWWR employed Dr. Walker. Moreover, Mayo is not alleged to have committed any tort; rather, the Miceks allege that Dr. Walker committed a tort, and that Mayo should be held vicariously liable because Dr. Walker was Mayo's agent and acted within the scope of that agency.  Thus, Mayo has as much incentive as Dr. Walker to prove that he did *not* commit malpractice.

Putting that aside, neither *Two Shields* nor *Laker Airways* held that *any time* a non-party was an "active participant" in alleged wrongdoing, the non-party is a required party under Rule 19(a)(1).  Such a holding would mark a dramatic shift in joinder law, as an absent joint tortfeasor is *always* an "active participant" in the acts that gave rise to the plaintiff's injuries, and yet "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."  *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990).

-10-

The holdings in *Two Shields* and *Laker Airways* were much narrower.  In fact, in both cases the court stressed that there were unique circumstances that distinguished the case from the typical case involving an absent joint tortfeasor.  The absent party in *Two Shields* was the United States government.  The litigation—which dealt with the propriety of oil and gas leases on Indian land—would impact the United States' interests in governmental leasing decisions, the interpretation and application of oil and gas leasing statutes and regulations, the administration of the existing leases, and the granting of new leases.  *Two Shields*, 790 F.3d at 795.  "[T]he interests of the United States" were therefore quite "different" from "those of a typical third party which claims no interest beyond contesting allegations about its own improper conduct."  *Id.* at 796.

In *Laker Airways*, the absent party was ACL, a private entity authorized by Britain's Parliament to administer airplane take-off and landing time slots.  Resolving the plaintiff's claims—which alleged antitrust violations in assigning those slots—would require making a finding about ACL's behavior, and that finding could result in Parliament revoking ACL's authorization.  *Laker Airways*, 182 F.3d at 848.  ACL's interests—like the interests of the United States in *Two Shields*—were "more significant than those of a routine joint tortfeasor."  *Id.*

-11-

In this case, however, the interests of Dr. Walker and NWWR do not even rise to "those of a routine joint tortfeasor." *Id.* True, a jury in this case could find that Dr. Walker committed malpractice, and that could result in Mayo seeking contribution from Dr. Walker or NWWR. But the same could be said of *every* case involving an absent joint tortfeasor. In such cases, there is always a risk that if the present joint tortfeasor is found liable, it will seek contribution from the absent joint tortfeasor. Moreover, in such cases, the absent joint tortfeasor always has an interest in "contesting allegations about its own improper conduct." *Two Shields*, 790 F.3d at 796; *see also McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 952 (4th Cir. 2020) (interest must "be more than a financial stake" (citation and quotation marks omitted)). Yet the general rule is that joinder of all joint tortfeasors is not necessary. *Temple*, 498 U.S. at 7. And this case presents an even less compelling case for joinder of absent tortfeasors than the typical case, as the present party (Mayo) is closely related to the absent parties (Dr. Walker and NWWR) and has a strong incentive to exonerate them.

Mayo argues that an adverse judgment in this case could have a preclusive effect on Dr. Walker and NWWR in the Wisconsin state litigation. But this could not occur unless (1) this case is litigated to a final judgment before the Wisconsin case is litigated to a final judgment; (2) Mayo loses this case; (3) the Miceks for some reason continue to pursue the Wisconsin case, even though the Micheks have been fully compensated;

(4) the Miceks argue in the Wisconsin action that offensive, nonmutual issue preclusion

prevents Dr. Walker or NWWR from relitigating the issue of Dr. Walker's malpractice;

and (5) the requirements for offensive, nonmutual issue preclusion are satisfied.  *See*

*Wirth v. Bosben*, 948 N.W.2d 494, at *4–5 (Wis. Ct. App. 2020) (unpublished table

decision) (outlining requirements for offensive, nonmutual issue preclusion in

Wisconsin).  But "the chances of all of these contingencies being fulfilled are small," and

thus the Court cannot find that Dr. Walker's or NWWR's interests will be impaired "as

a practical matter."  *See Mueller v. RadioShack Corp.*, No. 11-CV-0653 (PJS/JJG), 2011 WL

6826421, at *3 (D. Minn. Dec. 28, 2011).

It bears emphasizing that Mayo has not explained why Dr. Walker's and

NWWR's interests will be impaired or impeded by their *absence*.  Again, Dr. Walker,

NWWR, and Mayo are closely related.  NWWR is Mayo's wholly owned subsidiary,

which means that every dollar that comes out of the pocket of NWWR necessarily

comes out of the pocket of Mayo.  And all three parties have a strong incentive to prove

that Dr. Walker did not commit malpractice.  There is no reason to believe that Dr.

Walker and NWWR will not fully cooperate with Mayo's defense of this action, and

there is no reason to believe that Mayo will fail to raise any defense that would be

raised by Dr. Walker or NWWR if they were parties to this action.  *See Gwartz*, 23 F.3d

at 1429 (noting plaintiff had "the same interest in establishing the facts" as absent party

did); *AEI Income & Growth Fund*, 2005 WL 713629, at *2 (finding defendant, who owned 97% of absent business, had "substantial motivation to establish facts and make arguments adequate to protect" business's interest); *St. Jude*, 597 F. Supp. 2d at 978 ("An absent person has an interest in avoiding negative precedent.  If an existing party adequately represents the absent person's position, however, this interest is given little weight." (internal citations omitted)).

In short, Mayo's argument that the mere fact that an absent party was an "active participant" in the events giving rise to a lawsuit means that the absent party is a required party under Rule 19 is not supported by the text of Rule 19 or by the two judicial decisions on which Mayo primarily relies (*Two Shields* and *Laker Airways*).[3]

——————————————

[3]Mayo also relies on various district-court decisions.  All of those decisions are distinguishable or unpersuasive.

First, in *Dou Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc.*, an absent subsidiary was found to be a required party because it was the "primary participant" in the alleged wrongdoing.  149 F.R.D. 185, 188 (D. Minn. 1993).  The court found that the parent (an American corporation) could not adequately protect the interests of the absent subsidiary (a Singaporean corporation) even though the two were "closely aligned," because of "the locations of the parties and the facts of this case."  *Id.* at 189.  But nothing about "the locations of the parties" or "the facts of this case" suggests that Mayo will not be able to fully protect the interests of Dr. Walker or NWWR.

Second, in *Omega Demolition*, an absent LLC was found to be a required party because the LLC was the only party that had been accused of committing wrongful acts.  The court emphasized that the plaintiff's claims "can only appropriately be asserted against" the absent LLC.  306 F.R.D. at 228.  But this goes to the merits of the claim against the named defendant, not to whether the absent LLC was a required party.  *See*

(continued...)

-14-

Mayo's argument also conflicts with the longstanding rule that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple*, 498 U.S. at 7. For these reasons, this Court finds that neither Dr. Walker nor NWWR is a required party by virtue of being an "active participant" in the events giving rise to this lawsuit. *See Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 308 (8th Cir. 2009) (employees who committed tort against plaintiff were not necessary parties to lawsuit against employer); *Pyramid Sec. Ltd. v. IB Resol., Inc.*, 924 F.2d 1114, 1121 (D.C. Cir. 1991) (rejecting

---

[3](...continued)

*Gwartz*, 23 F.3d at 1429.  The court was also concerned that the named defendant would not adequately defend the interests of the absent LLC.  *Omega Demolition*, 306 F.R.D. at 229.  As explained, there is no reason to believe that Mayo will not adequately protect the interests of Dr. Walker and NWWR.

Third, in *Gay v. AVCO Financial Services, Inc.*, a parent and its subsidiaries were accused of wrongdoing, but only the parent was sued.  The court found the absent subsidiaries to be required parties because they were "major participants" in the wrongdoing.  769 F. Supp. 51, 56 (D.P.R. 1991).  The court was concerned that the parent might attempt to shift blame onto the subsidiaries, thereby hampering the ability of the subsidiaries to argue in subsequent litigation that the parent acted illegally.  *Id.* at 57.  Putting aside the soundness of this reasoning, *Gay* is plainly distinguishable.  In this case, there is no allegation of wrongdoing by Mayo, and Mayo has no incentive to shift blame to Dr. Walker or NWWR.

Finally, in *Lopez v. Shearson American Express, Inc.*, an absent subsidiary was held to be a required party because the plaintiff was seeking to hold the parent liable for the subsidiary's wrongdoing.  684 F. Supp. 1144 (D.P.R. 1988).  According to the court, "[m]erely because plaintiffs could execute a favorable judgment against the parent corporation is not sufficient to avoid joinder of the subsidiary whose presence is needed for a full adjudication of the controversy."  *Id.* at 1149.  The Court is not persuaded by this reasoning, which appears to have no connection to the text or purpose of Rule 19.

-15-

argument that subsidiary is required simply because it is a primary participant in wrongdoing); *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 100–02 (D.D.C. 2014) (security personnel who committed torts were not necessary parties to suit seeking to hold their employer vicarious liable, and subsidiary corporation was not necessary in action against parent based on subsidiary's conduct); *Pippert v. Gundersen Clinic, Ltd.*, 300 F. Supp. 2d 870, 880 (N.D. Iowa 2004) (absent doctor was not required under Rule 19(a) in medical-malpractice suit against nonprofit hospital corporation).

### b. Dr. Walker's Medical License

Mayo also argues that a settlement or judgment in this litigation could be reported to the National Practitioner Data Bank ("NPDB") and Wisconsin's Medical Examining Board—and those reports, in turn, could impact Dr. Walker's medical license. Mayo further argues that Dr. Walker's absence impairs his ability to protect his interest in his medical license, and therefore he is a required party under Rule 19(a)(1)(B)(i). The Court disagrees.

Under federal regulations, hospitals and insurers are required to report to both the NPDB and "the appropriate state licensing board(s)" payments made "for the benefit of a health care practitioner in settlement of or in satisfaction in whole or in part of a claim or a judgment against such health care practitioner for medical malpractice." 45 C.F.R. § 60.7(a). The NPDB collects and stores this payment information, and

hospitals are required to request a doctor's records when the doctor initially applies for a position or clinical privileges and every two years thereafter.  45 C.F.R. § 60.17(a).

Not all medical-malpractice payments are reportable, though.  If a practitioner is mentioned in a complaint but not formally named as a defendant (as is true with respect to Dr. Walker in this case), a payment is not reportable unless "(1) the practitioner also is named, identified, or described in the settlement or final judgment and (2) a payment was made on behalf of the named, identified, or described practitioner."  McClain Decl. Ex. 2, ECF No. 33-1 at 13.[4]  In other words, even if the Miceks receive a payment in this litigation, whether it would be reported would depend on how the settlement or judgment is executed.

In addition, even if a payment to the Miceks were to be reported, a report to the NPDB or Wisconsin's Medical Examining Board would have "no formal effect" on Dr. Walker's license.  *Clark v. Milwaukee County*, No. 18-CV-503, 2018 WL 3747848, at *2 (E.D. Wis. Aug. 7, 2018); *see also Rochling v. Dep't of Veterans Affairs*, 725 F.3d 927, 932 (8th Cir. 2013) ("[T]he NPDB report by itself is not a rebuke censuring or reprimanding

---

[4]Hospitals, clinics, and other medical organizations often avoid triggering reporting obligations by asking plaintiffs to name the organization, but not the doctor, as the defendant in a malpractice action.  This tactic, called the "corporate shield," is widely used.  *See* Lawrence E. Smarr, *A Comparative Assessment of the PIAA Data Sharing Project and the National Practitioner Data Bank: Policy, Purpose, and Application*, 60 Law & Contemp. Probs. 59, 67 (Winter 1997).  Mayo itself has asked plaintiffs to refrain from naming doctors as defendants.  *See* McClain Decl. Exs. 5–7; Messerly Aff. ¶¶ 3–4; Hallberg Aff. ¶¶ 2–3; Mackenzie Aff. ¶¶ 3–4.

Rochling.  Instead, the report simply means that a payment was made for the benefit of Rochling.  The official purpose of the report is to disclose information, not to reprimand." (internal citations, quotation marks, and alteration omitted)).  The NPDB's handbook cautions that "a settlement of a medical malpractice claim may occur for a variety of reasons that do not necessarily reflect negatively on the [doctor's] professional competence."  McClain Decl. Ex. 2, ECF No. 33-1 at 9.  The NPDB further warns that reports "should serve only to alert eligible entities that there *may* be a problem with the [doctor's] performance."  *Id.*

In sum, before Dr. Walker's ability to practice medicine could be impacted by this litigation: (1) the Miceks would have to receive a payment (either by virtue of a settlement or judgment); (2) that payment would have to be reportable; and (3) that report would have to affect Dr. Walker's medical license.  Given the multiple layers of uncertainty,[5] the Court cannot find that Dr. Walker's interest in his license will be impaired "as a practical matter" by his absence from this action.  Fed. R. Civ. P. 19(a)(1)(B)(i); *see also McKiver*, 980 F.3d at 952 (interest must be "more than speculation about a future event"); *St. Paul Mercury Ins. Co. v. Order of St. Benedict, Inc.*, No. 15-CV-2617 (DSD/KMM), 2017 WL 780572, at *2 (D. Minn. Feb. 28, 2017) (rejecting absent

_____

[5]The Court also notes that Dr. Walker has apparently retired, making it unclear if he even needs to maintain a medical license.  *See* McClain Decl. Ex. 4 (noting retirement from NWWR, but continued volunteer work).

party's interest in part because it was "purely speculative"); *Mueller*, 2011 WL 6826421, at *3 (interest inadequate when based on numerous "contingencies").

For these reasons, the Court holds that neither Dr. Walker nor NWWR is a required party for purposes of Rule 19(a)(1). And because neither is required, this Court need not decide whether this action should be dismissed under Rule 19(b). *See Temple*, 498 U.S. at 8; *Gwartz*, 23 F.3d at 1430. Mayo's motion under Rule 12(b)(7) to dismiss this action for failure to join a party under Rule 19 is denied.

## C. *Jurisdiction*

Mayo also argues that this action must be dismissed for lack of subject-matter jurisdiction because the parties are not diverse. Of course, the parties *are* diverse, as the Miceks are citizens of Wisconsin, and as Mayo is a citizen of Minnesota. But Mayo argues that under something known as the "attribution rule"—a "rule" invented by the Fifth Circuit in *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553 (5th Cir. 1985)—when a plaintiff sues a diverse parent corporation based solely on the conduct of a non-diverse subsidiary corporation, the subsidiary's citizenship should be attributed to the parent (even though the subsidiary is not a party to the lawsuit). In this case, says Mayo, NWWR's Wisconsin citizenship should be attributed to Mayo and this action dismissed for lack of diversity jurisdiction.

This Court has no intention of following *Freeman*, a case that is not binding on this Court and that has little to recommend it.  In *Freeman*, the plaintiffs (who appeared to be citizens of Colorado) brought an action for conversion against a parent corporation (a citizen of Oregon).  The action was based solely on the conduct of a non-party subsidiary (a citizen of Colorado).  The plaintiffs argued that the parent corporation should be held liable as the alter ego of the subsidiary.  The jury agreed and returned a verdict for the plaintiffs.  On appeal, the Fifth Circuit vacated the judgment for the plaintiffs because of "serious doubts that the trial court had subject matter jurisdiction of the case."  *Id.* at 555.  According to the Fifth Circuit, diversity jurisdiction appeared to be lacking because the parent corporation "should be viewed as" having the same citizenship as the subsidiary "for diversity purposes."  *Id.* at 556.

The Fifth Circuit cited two lines of cases in support of this "attribution rule."  The first line of cases held that multistate consolidated corporations retain the pre-consolidation citizenship of each component.  But *Freeman* had nothing to do with multistate consolidated corporations.  "The vast majority of multistate corporations are railroads that consolidated in the nineteenth and early twentieth centuries" and maintained the citizenship of each of the components only because that was mandated by state statutes.  Richard A. Simon, *Attributing Too Much: The Fifth Circuit Perverts the Scope of Diversity Jurisdiction*, 19 Cardozo L. Rev. 1857, 1876 (May 1998).  As a

result—and as *Freeman* itself conceded—"[t]hese cases are not directly on point,

grounded as they are on statutes pursuant to which the defendant railroads were

consolidated." *Freeman*, 754 F.2d at 557. To say that these cases are "not directly on

point" is an understatement; in fact, these cases provide no support for the attribution

rule. Simon, *Attributing Too Much*, *supra*, at 1876–77.

The second line of cases cited by the Fifth Circuit related to exercising *personal*

jurisdiction over a foreign parent based on a subsidiary's local activities. As any first-

year law student knows, however, the question of whether a federal court has *subject-*

*matter* jurisdiction over a *lawsuit* is entirely distinct from the question of whether a

federal court has *personal* jurisdiction over a *defendant*. Yet the Fifth Circuit claimed that

this line of personal-jurisdiction cases supported its attribution rule because "it would

be irrational to hold that a parent and a subsidiary have been fused for purposes of *in*

*personam* jurisdiction, but remain separate for purposes of subject matter jurisdiction."

*Freeman*, 754 F.2d at 558 (internal citation omitted). In fact, though, there would be

nothing "irrational" about such a holding. Courts routinely find that they have subject-

matter jurisdiction over a lawsuit but lack personal jurisdiction over a defendant, or that

they lack subject-matter jurisdiction over a lawsuit even though they have personal

jurisdiction over the defendant. One form of jurisdiction does not follow from another.

At bottom, then, the attribution rule invented in *Freeman* is supported by neither the language of 28 U.S.C. § 1332 nor the very cases that *Freeman* cited in support of the rule.

The attribution rule not only lacks a foundation, but it presents practical problems.  Recall that in *Freeman* a jury had found that the parent corporation was the alter ego of its subsidiary.  The Fifth Circuit relied on that finding in attributing the subsidiary's citizenship to the parent.  *See Freeman*, 754 F.2d at 557 (noting the parent and subsidiary "operated as a consolidated corporation in Colorado" and the accounts of both "were kept in the same office by the same employees . . . who received their salaries from one payroll").  If *Freeman* is read narrowly, the attribution rule applies only when the parent is found to be an alter ego of the subsidiary—a finding that will generally have to be made by a jury.  *See Rosenbrock v. Deutsche Lufthansa, A.G., Inc.*, No. 6:16-cv-0003, 2016 WL 2756589, at *6 (S.D. Tex. May 9, 2016) (noting *Freeman* court reached its decision "after a jury trial on the alter ego theory").

But resting subject-matter jurisdiction on a jury finding of alter ego status is unworkable; a lawsuit would have to be tried to a conclusion before the court could know whether it had jurisdiction.  As a result, some trial courts have expanded *Freeman*'s attribution rule to *all* "cases in which the substantive claim asserted by the plaintiff is in truth a claim against the unsued company."  *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1517 (D. Minn. 1996).  In this Court's view, cases such as *Polanco*

compound one mistake with another.  The first mistake (made by the Fifth Circuit in

*Freeman*) is to apply the doctrine of veil piercing— a doctrine regarding substantive

liability—in deciding whether a federal court has jurisdiction over an action under a

particular federal statute.  The second mistake (made by *Polanco* and similar cases) is to

"do[] away with the strict requirements for traditional veil piercing."  *Cook, Stratton &*

*Co., Inc. v. Universal Ins. Grp., Inc.*, 241 F.R.D. 411, 420 (D.P.R. 2007); *see also* Simon,

*Attributing Too Much*, *supra*, at 1883–85.  In *Polanco*, for example, the court applied the

attribution rule even though the plaintiff had not alleged and the court had not found

"the existence of any of the[] factors" required to disregard corporate form.  941 F.

Supp. at 1519; *see also Rigg Ins. Managers, Inc. v. Stough*, No. 3:03-CV-01310-P, 2003 WL

21500424, at *7 (N.D. Tex. Apr. 22, 2003) (applying *Freeman* even though "this case does

not involve any allegation of the alter ego"); *see also* Simon, *Attributing Too Much*, *supra*,

at 1873–75.  In other words, the expanded approach adopted by *Polanco* and similar

decisions disregards the corporate form without even an *allegation*—much less a

*showing*—of alter ego status.  *Cf. Consumer's Co-op. of Walworth Cty. v. Olsen*, 419 N.W.2d

211, 217–18 (Wis. 1988) (listing requirements for veil piercing under Wisconsin law);

*Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979)

(listing requirements for veil piercing under Minnesota law).

The Court notes that the attribution rule has never been adopted by the Eighth Circuit and has gained little traction outside of the Fifth Circuit (despite being in existence since 1985). The Court recognizes that some district courts have applied the rule, but, for the most part, those courts have not examined the rule carefully nor addressed the shortcomings of the rule described above.

For these reasons, this Court will not attribute NWWR's citizenship to Mayo.[6] Because the Miceks are citizens of Wisconsin and Mayo is a citizen of Minnesota, this Court finds that it has subject-matter jurisdiction over this action and denies Mayo's motion to dismiss under Rule 12(b)(1).

---

[6]Even if the Court were inclined to accept the attribution rule as initially applied in *Freeman*—that is, a rule that depends on the parent being found to be an alter ego of the subsidiary—none of the parties to this action have alleged that Mayo is the alter ego of NWWR (much less presented evidence in support of such an allegation). Thus, even if the Court agreed with *Freeman*, the Court would still decline to attribute NWWR's citizenship to Mayo. *See Rosenbrock*, 2016 WL 2756589, at *6 (declining to apply *Freeman* when there were neither allegations nor evidence of an alter ego relationship); *Compass Bank v. Tex. Cmty. Bank*, No. DR-09-CV-056-AML-CW, 2010 WL 11506608, at *5 (W.D. Tex. Apr. 26, 2010) ("A subsidiary's activities, however, should not be imputed to a parent for purposes of diversity jurisdiction when there is no evidence that the entities should be treated as alter egos."), *report & recommendation adopted*, 2010 WL 11506609 (W.D. Tex. Sept. 21, 2010); *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 181 F. Supp. 2d 914, 921 n.8 (N.D. Ill. 2002) ("There is no evidence that CHCIL is an alter ego of CIGNA Corp. Thus, we dismiss Provider Defendants' attribution argument."); *Bejcek v. Allied Life Fin. Corp.*, 131 F. Supp. 2d 1109, 1112 (S.D. Iowa 2001) (rejecting alter ego argument in jurisdiction context, including because defendants did "not present any evidence in support of it").

-24-

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motion to dismiss [ECF No. 12] is

DENIED.

Dated:  November 12, 2021

Patrick J. Schiltz
United States District Judge